UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS DANIEL,

              Plaintiff,

-against-

SERGEANT J. CONFORTI; IGP-SUPERVISOR L. STANAWAY; C.O. JOHN "WESLEY" DOE; C.O. J. GRASSO; C.O. W. FREEMAN; C.O. WOMASKO; C.O. J. CUNLIFFE; C.O. K. CHASE; C.O. C. RICHARDSON; C.O. C. LAMPON, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES,

              Defendants.

16-CV-248 (LAP)

ORDER OF DISMISSAL

LORETTA A. PRESKA, United States District Judge:

      Plaintiff Dennis Daniel, currently incarcerated at Green Haven Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that the Defendants violated his rights under the First and Eighth Amendments. By order dated January 14, 2016, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.[1] On February 17, 2016, the Court granted Plaintiff leave to file an amended complaint to cure certain pleading deficiencies. Plaintiff filed an amended complaint on April 15, 2016, naming thirty defendants, none of whom had been named in the original complaint. The amended complaint, however, also failed to state a claim, and on July 12, 2016, the Court granted Plaintiff leave to file a second amended complaint. Plaintiff filed his second amended complaint on August 16,

---

[1] Under 28 U.S.C. § 1915(b)(1), prisoners must pay the full amount of the $350.00 filing fee even when they have been granted permission to proceed *in forma pauperis*.

2016. For the reasons that follow, the Court must dismiss the second amended complaint in its entirety.

## STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

The following allegations are taken from Plaintiff's second amended complaint: On an unstated date inside Green Haven Correctional Facility, Defendant Cunliffe "singled [Plaintiff] out" from a large group of inmates and locked him inside a housing unit without access to a toilet, food, water, or prescription medication. Plaintiff does not provide a motive for Cunliffe's actions or state how long these deprivations lasted. (Sec. Am. Compl. at 2.)

In June 2013, Plaintiff filed a grievance against Cunliffe for the acts described above. Three to four months later, Cunliffe retaliated against Plaintiff by denying him recreation time on a single occasion, denying him breakfast on a single occasion, and causing a 40-minute delay of one of Plaintiff's visits. About five to six months after the grievance was filed, Cunliffe "ransacked" Plaintiff's cell and on several occasions yelled orders at Plaintiff, using profanity once. During the same time period, Defendant Conforti withheld a vistor's care package from

2

Plaintiff for approximately two days. Plaintiff later attempted to mail a package to a person outside of prison, and it became lost. Plaintiff blames Conforti for this failure but does not explain what Conforti did or failed to do that caused the package to become lost. Plaintiff also does not state whether Conforti was aware of the grievance that Plaintiff had filed against Cunliffe months before. (*Id*. at 3.)

During an unstated time period, "steady officers and area supervisors" encouraged new inmate-trainees to deny certain services to Plaintiff, including meals, showers, and phone calls. Plaintiff does not state how often these denials occurred or identify the persons responsible for them. (*Id*.) On December 18, 2013, Plaintiff was transferred to a different cell block. Unnamed "area sergeants" twice "chastised or threatened" Plaintiff for writing grievances. (*Id*. at 4.)

On February 4, 2014, Defendants Chase and Doe failed to adequately supervise one of their inmate-trainees, and, as a result, Plaintiff was denied access to the law library. While Plaintiff blames this deprivation on the lack of supervision provided by Chase and Doe, he also blames unnamed "area supervisors" for giving Chase and Doe the "green light" to "harass" Plaintiff. Three weeks later, Defendants Grasso, Lampon, and Doe denied Plaintiff access to the law library. Plaintiff does not identify any pending litigation on which he was working or state whether these denials hindered any litigation opportunities. (*Id*.)

In September 2014, Defendant Richardson "had another inmate deliver [P]laintiff's legal mail" that had arrived the day before. Over two months later, Defendant Richardson opened Plaintiff's legal mail outside of his presence. When Plaintiff requested that a supervisor investigate, "the mail ended up getting lost." Plaintiff does not identify who "lost" the mail or state whether this act was intentional. He also does not describe whether this "lost" legal mail compromised any pending or potential litigation. (*Id*.)

3

Nine months later, Defendant Womasko denied breakfast to Plaintiff. Six months after that, Defendants Womasko and Freeman "grabbed [P]laintiff's handballs during the progression of a game and tossed them over a nearby wall." (*Id.*)

Plaintiff also states that Defendant Stanaway, the supervisor of the prison's grievance program, failed to provide Plaintiff "an orderly, fair, simple and expeditious method for resolving grievances pursuant to the Correction Law" and that Stanaway "misrepresent[ed] [Plaintiff's] issues and misdirect[ed] the investigations of complaints." (*Id*. at 5.)

Plaintiff seeks an injuction requiring the Defendants to end their retaliatory conduct towards him. He also seeks compensatory damages of $25,000.00 from each Defendant and a total of $586.00 in punitive damages. (*Id*. at 6.)

## DISCUSSION

A.  **Access-to-Courts Claim**

The Court construes Plaintiff's allegations that he was denied phone calls and access to the law library, that there were irregularities related to his mail, and that Stanaway's supervision of the prison's inmate grievance program was inadequate, as attempts to assert claims that his First Amendment right of access to the courts was violated. A claim that a prisoner's right of access to the courts has been denied may arise from the frustration or hindrance of "a litigating opportunity yet to be gained." *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). To state a claim for denial of access to the courts, a plaintiff must allege facts showing that the defendant's conduct (1) "was deliberate and malicious," and (2) "resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks omitted); *see also Harbury*, 536 U.S. at 415; *Lewis v. Casey,* 518 U.S. 343, 350-53 (1996). To demonstrate actual injury, a plaintiff must allege: (1) a

4

valid underlying cause of action separate from the right-of-access claim; and (2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 546 U.S. at 415.

While Plaintiff has alleged that, on isolated occasions over a two-year period, certain Defendants interfered with his mail, denied him access to the law library, and denied him phone calls, he has not identified any litigation opportunity that was hindered or obstructed by the Defendants. In other words, Plaintiff has failed to allege that he was prevented from litigating a meritorious claim because of Defendants' conduct. *See Harris v. Keane*, 962 F. Supp. 397, 404-05 (S.D.N.Y. 1997) (holding a one-day deprivation of access to the law library without an allegation of an actual injury does not constitute a constitutional violation). In the order dated July 12, 2016, the Court provided Plaintiff an opportunity to amend his complaint to add detail to this claim, but Plaintiff has failed to do so.

Plaintiff also alleges that Defendant Stanaway's supervision of the prison's inmate grievance program deprived him of meaningful access to the program and eliminated the possibility that his grievances would be handled in an adequate manner. This is insufficient to support an access-to-courts claim under the First Amendment.

"The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances." *Harris v. Westchester Cnty. Dep't of Corr.*, No. 06-CV-2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008). District courts have explained that "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. When an inmate sets forth a constitutional claim in a grievance to prison officials and the grievance is ignored, the inmate has the right to directly petition the government for redress of that claim. Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are

5

properly processed does not create a claim under § 1983." *Cancel v. Goord*, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. 2001) (internal citation omitted); *see also Johnson v. Barney*, No. 04-CV-10204 (LBS), 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same cannot be said for the prison grievance system."); *Mimms v. Carr,* No. 09-CV-5740, 2011 WL 2360059 (NGG), at *10 (E.D.N.Y. June 9, 2011) ("First Amendment rights to petition the government and access the courts are not infringed where prison officials deny inmates access to grievance procedures."). Plaintiff therefore fails to state a claim that he was denied access to the courts. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.** **Conditions-of-Confinement Claim**

The Court construes Plaintiff's allegations regarding Cunliffe's lockdown of Plaintiff; Cunliffe's one-time denial of breakfast, one-time denial of recreation, and 40-minute delay of Plaintiff's visit; Cunliffe's shouting of orders that contained profanity; Womasko's one-time denial of breakfast to Plaintiff; and Womasko and Freeman's interference with Plaintiff's recreation time, to raise conditions-of-confinement claims under the Eighth Amendment.

To state a conditions-of-confinement claim, a plaintiff must allege that a corrections official was deliberately indifferent to a substantial risk of serious harm to him. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993). A conditions-of-confinement claim includes an objective component – that the condition posed a substantial risk of serious harm that fell below the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). It also includes a subjective component – that the defendant acted with deliberate indifference by knowing of and disregarding an excessive risk to his health or safety. *Id.*

6

Here, Plaintiff has not alleged with any specificity how Defendants' denials of breakfast to Plaintiff – on two occasions over a two-year span – posed a substantial risk of harm to him, or that the Defendants acted with deliberate indifference. In any event, the denial of a meal does not rise to the level of a constitutional violation absent some aggravating circumstances. *See, e.g.*, *Rush v. Fischer*, No. 09-CV-9918 (JGK), 2013 WL 542641, at *9 (S.D.N.Y. Feb. 15, 2013).

Plaintiff's allegations that Cunliffe shouted baseless orders at Plaintiff, using profanity once, does not state a constitutional claim. Verbal abuse, threats, and intimidation standing alone, without injury or damage, do not amount to a constitutional deprivation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (name-calling without "any appreciable injury" is not a constitutional violation); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) ("verbal intimidation does not rise to the level of a constitutional violation"); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (citation omitted). Plaintiff's allegations of verbal harassment and Cunliffe's unprofessional conduct do not rise to the level of a constitutional violation.

Likewise, Plaintiff has not alleged how Defendants Womasko and Freeman's interference with Plaintiff's recreation time on a single occasion jeopardized his health or safety, or whether these Defendants acted with deliberate indifference. *See Gibson v. City of N.Y.*, No. 96-CV-3409 (DLC), 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) ("[T]he deprivation of the opportunity to participate in recreation for eight days in a sixty day period, even when coupled with the deprivation of an opportunity to exercise on two consecutive days, is not sufficiently serious to constitute punishment under the Fourteenth Amendment"); *Young v. Scully*, No. 91-CV-4332

7

(JSM), 1993 WL 88144, at *5 (S.D.N.Y. March 22, 1993) (holding that the plaintiff's Eighth Amendment rights were not violated when he was deprived of exercise "for a period of several days"). Plaintiff's condition-of-confinement claims must therefore be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Retalation Claim**

Prisoners' claims of retaliation must be examined with skepticism and particular care because they are "'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). To state a First Amendment retaliation claim under Section 1983, a prisoner must allege facts showing that "(1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). An adverse action must be "retaliatory conduct ... [that] would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights... Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 492-93.

A plaintiff can allege a causal connection giving rise to an inference of retaliation by showing that the protected activity was close in time to the adverse action. *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001); *accord Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir. 2001). *Compare Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (passage of six months between the dismissal of Plaintiff's lawsuit and an allegedly retaliatory beating by a correction officer who was a defendant in the prior lawsuit was

sufficiently close to support an inference of a causal connection), *with Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the protected activity).

Plaintiff alleges that Cocuzza "ransacked" his cell about five to six months after Plaintiff filed a grievance against him (but does not allege that any property was destroyed), and that Conforti withheld a vistor's care package from Plaintiff for approximately two days. The Court construes these allegations as raising a retaliation claim under the First Amendment.

The retaliation claim against Cocuzza related to the search of Plaintiff's cell must be dismissed. Prisoners do not have the right to be free from searches of their cells; even allegations of cell searches conducted "solely for harassment," without more, do not state a constitutional claim. *See Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002) (citing *Hudson v. Palmer*, 486 U.S. 517, 526 (1984)); *see also, e.g.*, *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) ("[Defendant] correctly asserts that [plaintiff] had no constitutional right to be free from cell searches of any kind, including retaliatory cell searches."); *Salahuddin v. Mead*, No. 95-CV-8581 (MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases holding that even "arbitrary" or "retaliatory" cell searches in prisons do not implicate constitutional rights); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("It is well-settled ... that plaintiff cannot base a retaliation claim against defendant[s] based on a cell search."). Rather, an unjustified search of an inmate's prison cell violates the Constitution only when the search harms the inmate so severely as to constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *See Harris v. Fischer*, No. 11-CV-6260 (CM), 2014 WL 3859242, at *18 (S.D.N.Y. Aug. 1, 2014), *rev'd sub nom on other grounds*, *Harris v. Miller*, 818 F.3d 49 (2d Cir.

2016) (recognizing that prisoners retain a limited right to *bodily* integrity under the Fourth Amendment). Cocuzza's one-time search of Plaintiff's cell, without any physical touching of Plaintiff or property destruction that could not be remedied by state law procedures, does not meet this standard.

The retaliation claim against Conforti must also be dismissed. Plaintiff does not state whether Conforti was aware of the grievance that Plaintiff had filed against Cunliffe months before. (*Id*. at 3.) Plaintiff's allegations do not demonstrate "a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380. Moreover, Plaintiff has not explained how a two-day delay in delivering a care package to him "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 492-93. The retaliation claims must therefore be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy to Plaintiff, and note service on the docket. Plaintiff's second amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: August 29, 2016
       New York, New York

                                                        LORETTA A. PRESKA
                                                        United States District Judge